Maurice C. DREICER, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 80–1227.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 26, 1981.

Decided Sept. 24, 1981.

Steven Kamerman, Mamaroneck, N. Y., for appellant.

Steven I. Frahm, Atty., Dept. of Justice, Washington, D. C., with whom M. Carr Ferguson, Asst. Atty. Gen., and Richard Farber, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellee. Ernest J. Brown, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for appellee.

Before ROBINSON, Chief Judge, McGOWAN, Senior Circuit Judge, and RICHEY,* District Judge.

Opinion for the Court filed by Chief Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Chief Judge:

Maurice C. Dreicer appeals from a decision of the United States Tax Court disallowing deductions, in computation of two years' federal income taxes, for losses incurred assertedly in professional endeavors

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

as a multimedia personality. The Tax Court found that the particular pursuits in which Dreicer sustained the reported losses were writing and lecturing, and concluded that he had not engaged in those activities for profit, as defined by Section 183 of the Internal Revenue Code[1] and regulations promulgated thereunder,[2] for the stated reason that he had no bona fide expectation of realizing a profit from them.[3]

■ We perceive no basis for disturbing the Tax Court's finding on the nature of the undertakings generating the losses for which deductions are sought. We do not accept, however, the legal test that the court employed in ruling on deductibility. We hold that a taxpayer engages in an activity for profit, within the meaning of Section 183 and the implementing regulations, when profit is actually and honestly his objective though the prospect of achieving it may seem dim. Because the Tax Court applied a different standard, we reverse and remand for redetermination of Dreicer's deduction claims.

## I

By virtue of Section 162 of the Internal Revenue Code, a taxpayer may deduct from gross income all ordinary and necessary expenses incurred in a business,[4] and, under Section 212, in the production or collection of income.[5] A corollary rule, embodied in Section 165, permits deduction of losses sustained in a trade or business, or in a transaction entered into for profit.[6] Section 183 qualifies these provisions by specifically disallowing, with limited exceptions not relevant here, deductions attributable to activities "not engaged in for profit."[7] Thus, a taxpayer claiming a deduction under Sections 162 or 212 for an expense, or under Section 165 for a loss, must be prepared to demonstrate an associated profit motive in order to avoid the ban of Section 183.[8] Appraising the facts salient in Dreicer's instance, which we need only summarize,[9] the Tax Court held that he did not.

Dreicer, a citizen of the United States, maintains his residence in the Canary Islands, Spain, and engages heavily in global travel.[10] He derives a substantial income as beneficiary of a family trust,[11] and in the early 1950's, Dreicer began to focus his professional attention on the fields of tourism and dining.[12] In 1955, he published *The Diner's Companion*, a compilation of his opinions on dining and on various restau-

1. I.R.C. § 183, quoted in relevant part in text *infra* at note 7.

2. Treas.Reg. § 1.183–2 (1973), quoted in relevant part in text *infra* at note 66.

3. *Dreicer v. Commissioner*, 48 T.C.M. (P–H) 1535 (1979).

4. I.R.C. § 162.

5. *Id.* § 212.

6. *Id.* § 165.

7. *Id.* § 183, providing pertinently:
   (a) ... In the case of an activity engaged in by an individual ..., if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section.

   \*    \*    \*    \*    \*    \*

   (c) ... For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under Section 162 or under paragraph (1) or (2) of Section 212.

8. See, *e.g., Jasionowski v. Commissioner*, 66 T.C. 312, 319 (1976).

9. The Tax Court's opinion sets forth the facts in elaborate detail. See *Dreicer v. Commissioner, supra* note 3, 48 T.C.M. (P–H) at 1535–1537. We thus may abbreviate our recital, confining it to highlights shaping and sharpening the two issues presented on appeal.

10. *Id.* at 1535, 1536. Dreicer describes himself as a multimedia personality, *id.* at 1539, under which general label he includes writing, lecturing, consulting, endorsing consumer products, hosting and appearing on radio and television talk programs. See Brief for Appellant at 17.

11. See note 42 *infra*.

12. *Dreicer v. Commissioner, supra* note 3, 48 T.C.M. (P–H) at 1535. Dreicer had engaged previously in origination of ideas for radio and television programs, and had been a pioneer in the television industry. *Id.*

rants throughout the world,[13] but the book was a commercial failure.[14] Undaunted, Dreicer conceived the idea of some day writing another book, this one to enshrine his reminiscence on a life dedicated to epicurism and travel.[15] In preparation for this sybaritic swan song, he spent the next twenty years traveling about the world,[16] staying in some of the finest hotels and dining in some of the best restaurants.[17] The material he gathered was also to be utilized in lectures before travel organizations and public appearances on radio and television.[18] By the mid-1970s, Dreicer had completed a rough draft of the second book—parts of which originally had appeared in *The Diner's Companion*[19]—and titled it *My 27 Year Search for the Perfect Steak—Still Looking.*[20] Two publishing houses to which he submitted the manuscript, however, returned it,[21] and seemingly he abandoned all hope of publishing.[22]

When Dreicer filed his federal income tax returns for 1972 and 1973, he claimed deductible losses of $21,795.76 and $28,022.05, respectively, for travel and other related business expenses.[23] The Commissioner of Internal Revenue thereafter issued a notice of deficiency, disallowing the deductions on the ground that the losses arose from activities not pursued for profit,[24] and the Tax Court agreed.[25] The court disputed Dreicer's characterization of his professional self as a multi-media personality, finding instead that he was a writer-lecturer on tourism and dining.[26] Having so defined his activity for Section 183 analysis, the court concluded that he had not entertained a bona fide expectation of profit from writing and lecturing, and on that account denied the deductions.[27]

Dreicer challenges the Tax Court's decision on two grounds. First, he contends that the court went amiss in finding that for purposes of Section 183 his professional activity was writing-lecturing rather than development as a public personality.[28] He also argues that the court erred as a matter of law in confining the concept of a for-profit activity to one from which the taxpayer actually expects to make a profit.[29] We consider each of these contentions in turn.

II

The Tax Court discounted several of Dreicer's diverse professional undertakings when it defined the activity in which he sustained his reported losses. Contesting the court's classification of that activity as writer-lecturer on tourism and dining, Dreicer points to other pursuits—such as consulting, endorsing consumer products, and participation in radio and television programs—as evidence that his ultimate goal was to become a multi-media personality

**13.** *Id.* at 1536.

**14.** On $1,645 in sales of *The Diner's Companion*, Dreicer's total royalties were $643. After the publisher reduced the price of the book for quick sale, Dreicer purchased the remaining copies and subsequently sold 50 to 100 copies annually. *Id.*

**15.** *Id.*

**16.** *Id.*

**17.** *Id.* at 1536–1537. Dreicer also engaged in various promotional arrangements during the 1950's and 1960's, involving consulting, writing for a travel magazine, and lecturing before various travel organizations. He did not receive any compensation, however, for any of these activities. *Id.* at 1536.

**18.** *Id.* at 1539.

**19.** *Id.*

**20.** *Id.*

**21.** *Id.*

**22.** See *id.*

**23.** *Id.* at 1537. Similar expenses had exceeded, on the average, $25,000 each year since 1956. *Id.*

**24.** *Id.*

**25.** *Id.* at 1542.

**26.** *Id.* at 1539.

**27.** *Id.* at 1539–1542.

**28.** Brief for Appellant at 14–22.

**29.** *Id.* at 22–30.

and reap huge financial returns once he became famous.[30]

A Treasury regulation sets forth the considerations relevant in gauging the scope of a taxpayer's activity for purposes of ascertaining whether and to what extent Section 183 applies. It states:

> Generally, the most significant facts and circumstances in making this determination are the degree of organizational and economic interrelationship of the various undertakings, the business purpose which is (or might be) served by carrying on the various undertakings separately or together in a trade or business or in an investment setting, and the similarity of various undertakings.[31]

The regulation additionally provides that although "the Commissioner will accept the characterization by the taxpayer of several undertakings either as a single activity or as separate activities," the taxpayer's designation will be rejected "when it appears that [it] is artificial and cannot be reasonably supported under the facts and circumstances of the case."[32]

The Tax Court agreed with the Commissioner that the activity pertinent to Section 183 analysis consisted in Dreicer's endeavors as a writer-lecturer on tourism and dining.[33] Contrary to Dreicer's present contention, however, the court made clear that this activity encompassed the bulk of the other undertakings he associated with the asserted effort to promote his personality except his work in originating radio and television programs unconnected with his travel.[34] Excluding the latter, the Court found that "any such activity . . . would be wholly unrelated to [Dreicer's] writing and lecturing on travel and dining."[35]

■ We decline the invitation to overturn the court's findings as clearly erroneous.[36] True it is that the court recognized that Dreicer continued to revise old ideas and develop new ones for radio and television programs during the 1960's and 1970's.[37] But the record does not establish either an organizational or economic relationship of those activities to his writing and lecturing on tourism and dining.[38] As the governing regulation makes clear, a taxpayer's description of his activities need not be accepted by the Commissioner—and surely not by the Tax Court—when in light of all other circumstances it appears artificial or lacking in reasonable support.[39] Absent specific evidence that all of Dreicer's pursuits were merely parts of a larger integrated professional enterprise, the court cannot be faulted for the classification it gave them.

### III

Dreicer also argues that even if the activity for which he claims deductions was no

---

**30.** See note 17 *supra.*

**31.** Treas.Reg. § 1.183–1(d)(1) (1973).

**32.** *Id.*

**33.** *Dreicer v. Commissioner, supra* note 3, 48 T.C.M. (P–H) at 1539.

**34.** *Id.* The court stated:
> [Dreicer] incurred the expenses during the years in issue as he traveled around the world to gather material for a book about "the perfect steak." As we understand [Dreicer's] position, he expected to use the information which he acquired on such travels, not only for the preparation of a book, but also to prepare for lectures, on radio and television appearances, and other public appearances. It is not clear as to whether [Dreicer] claims that he also was working on the origination and creation of shows not related to his traveling, but any such activity produced no income during the years at issue and would be wholly unrelated to his writing and lecturing on travel and dining. Accordingly, we consider only his activities relating to writing and lecturing on dining and traveling as the "activity" to be tested under Section 183.
> *Id.*

**35.** See note 34 *supra.*

**36.** The Tax Court's findings of fact are binding on federal courts of appeals unless clearly erroneous. I.R.C. § 7482(a); *Commissioner v. Duberstein,* 363 U.S. 278, 291 & n.13, 80 S.Ct. 1190, 1200 & n.13, 4 L.Ed.2d 1218, 1228 & n.13 (1960).

**37.** *Dreicer v. Commissioner, supra* note 3, 48 T.C.M. (P–H) at 1536.

**38.** See text *supra* at note 31.

**39.** See text *supra* at note 32.

more than writing and lecturing, the Tax Court applied the wrong legal standard in determining whether he engaged in it for profit, as defined by Section 183, because the court predicated its result on his profit *expectation* rather than to his profit *objective*. We agree.

Addressing the losses that Dreicer deducted for the two tax years in question, the Tax Court made a searching inquiry into Dreicer's writing and lecturing pursuits in light of various factors set forth in the Treasury regulations pertinent.[40] The court noted Dreicer's lengthy history of substantial losses in those endeavors;[41] his sizable independent income, which enabled him to continue writing and lecturing notwithstanding those losses;[42] the tax benefits he had obtained from deduction of such losses in earlier years;[43] the unbusinesslike manner in which he had conducted his operations, including abandonment of efforts to get his second book published;[44] his apparent lack of expertise on the subjects of tourism and dining;[45] the pleasure he took in traveling and dining;[46] and his failure to achieve commercial success as a writer-lecturer.[47]

We applaud the Tax Court for the thoroughness of its factual inquiry, but we cannot place the stamp of approval upon its eventual legal outcome. The court concluded that Dreicer's losses were nondeductible on the sole ground that he did not have a "bona fide expectation of profit" from writing and lecturing.[48] The language of Section 183, its legislative history and the applicable Treasury regulation combine to demonstrate that the court's standard is erroneous as a matter of law.[49]

■ Section 183 was adopted as part of the Tax Reform Act of 1969[50] to replace for taxable years beginning after December 31, 1969, the so-called "hobby loss" provision of former Section 270.[51] The preexisting hobby loss feature was a limitation on deductible losses incurred in an individual's trade or business to $50,000 per year if the losses therefrom had exceeded $50,000 for five or more consecutive years[52]—a restriction

---

**40.** See Treas.Reg. § 1.183–2 (1973). Among the factors listed by the regulation as relevant in determining whether an activity is engaged in for profit are the manner in which the taxpayer carries on the activity; the expertise of the taxpayer or his advisors; the time and effort expended by the taxpayer in carrying on the activity; the taxpayer's expectation that assets used in the activity may appreciate in value; the success of the taxpayer in carrying on other similar or dissimilar activities; the taxpayer's history of income and losses with respect to the activity; the amount of occasional profits, if any, which are earned; the financial status of the taxpayer; and the taxpayer's personal pleasure or recreational interest in the activity.

**41.** *Dreicer v. Commissioner, supra* note 3, 48 T.C.M. (P–H) at 1539. Dreicer conceded, and the Tax Court found, that the aggregate of his losses therefrom between 1956 and 1976 exceeded $500,000. *Id.* at 1540.

**42.** *Id.* at 1539, 1540. The court found that Dreicer's income, independently of his writing and lecturing, was $130,647.14 in 1972 and $91,803.49 in 1973, derived exclusively from a family trust. *Id.*

**43.** *Id.* at 1540.

**44.** *Id.* at 1540–1541.

**45.** *Id.* at 1541.

**46.** *Id.* at 1540–1541. Dreicer claimed before the Tax Court that he derives little personal enjoyment from "living out of a suitcase." *Id.* at 1541. The court observed, however, that "if [Dreicer] were so adverse to this style of living, then he would have completed his 'research' long ago and have moved on to other pursuits." *Id.*

**47.** *Id.*

**48.** *Id.* at 1542.

**49.** The Tax Court has applied the "bona fide expectation of profit" standard in other § 183 cases. See *e.g., Golanty v. Commissioner;* 72 T.C. 411, 425–426 (1979); *Dunn v. Commissioner*, 72 T.C. 28, 33 (1979); *Churchman v. Commissioner*, 68 T.C. 696, 701 (1977).

**50.** Pub.L.No.91–172, 83 Stat. 487 (1969), codified variously as parts of the Internal Revenue Code of 1954.

**51.** See I.R.C. § 270 (repealed 1969).

**52.** See H.R.Rep.No.413, 91st Cong., 1st Sess. 48–49 (1969); S.Rep.No.552, 91st Cong., 1st Sess. 104 (1969), U.S.Code Cong. & Admin. News 1969, p. 1645; *Jasionowski v. Commissioner, supra* note 8, 66 T.C. at 319.

many taxpayers had proven creative enough to avoid.[53] Both Houses of Congress however, were aware of judicial disallowances of such losses when "the activity carried on by the taxpayer from which the loss results is not a business but is merely a hobby." [54] Each agreed, moreover, "that this basic principle provides a more effective and reasonable basis for distinguishing situations where taxpayers were not carrying on a business to realize a profit but rather were merely attempting to utilize the losses from the operation to offset their other income." [55] The two Houses disagreed, however, over one element critical to application of this distinction.

The House bill would have replaced the old hobby loss provision with rules specifying that a taxpayer could not deduct losses arising from an activity carried on without "a reasonable expectation of realizing a profit from it." [56] Determinations on whether the activity was conducted "with the expectation of realizing a profit" would be made on the basis of all facts and circumstances; [57] and losses exceeding $25,000 in three out of five years would give rise to a rebuttable presumption "that the taxpayer was not operating the activity with a reasonable expectation of realizing a profit from it." [58]

In the Senate, however, there was concern "that requiring a taxpayer to have a 'reasonable expectation' of profit may cause losses to be disallowed in situations where an activity is being carried on as a business rather than as a hobby." [59] The Senate Committee on Finance accordingly "modified the House bill to provide that in determining whether losses from an activity are to be allowed, the focus is to be on whether the activity is engaged in for profit rather than whether it is carried on with a reasonable expectation of profit." [60] The Committee explained:

This will prevent the rule from being applicable to situations where many would consider that it is not reasonable to expect an activity to result in a profit even though the evidence available indicates that the activity actually is engaged in for profit. For example, it might be argued that there was not a "reasonable" expectation of profit in the case of a bona fide inventor or a person who invests in a wildcat oil well. A similar argument might be made in the case of a poor person engaged in what appears to be an inefficient farming operation. The committee does not believe that this provision should apply to these situations or that the House intended it to so apply, if the activity actually is engaged in for profit.[61]

In the end, the Senate prevailed. The Conference Committee, noting that "[i]n lieu of the test of 'a reasonable expectation of profit' the Senate amendment substitutes the test of 'not engaged in for profit,' " [62] adopted the Senate version,[63] and in that form the legislation ultimately passed

**53.** H.R.Rep.No.413, 91st Cong., 1st Sess. 48–49 (1969); S.Rep.No.552, 91st Cong., 1st Sess. 104 (1969).

**54.** H.R.Rep.No.413, 91st Cong., 1st Sess. 48–49 (1969); S.Rep.No.552, 91st Cong., 1st Sess. 104 (1969), U.S.Code Cong. & Admin.News 1969, pp. 1717, 2133.

**55.** H.R.Rep.No.413, 91st Cong., 1st Sess. 48–49 (1969); S.Rep.No.552, 91st Cong., 1st Sess. 104 (1969), U.S.Code Cong. & Admin.News 1969, pp. 1717, 2133.

**56.** H.R.Rep.No.413, 91st Cong., 1st Sess. 49 (1969), U.S.Code Cong. & Admin.News 1969, p. 1718.

**57.** *Id.*

**58.** *Id.*

**59.** S.Rep.No.552, 91st Cong., 1st Sess. 104 (1969), U.S.Code Cong. & Admin.News 1969, p. 2133.

**60.** *Id.*

**61.** *Id.*

**62.** H.R.Rep.No. 782, 91st Cong., 1st Sess. 298 (1969) (conference report), U.S.Code Cong. & Admin.News 1969, p. 2413.

**63.** *Id.*

both Houses.[64] Section 183 thus emerged as the product of a congressional purpose to pivot its operation, not on whether the taxpayer *expected* a profit, but instead on whether the taxpayer engaged in the activity with the *objective* of making a profit.

The language of both Section 183 and the Treasury regulations implementing it is faithful to this legislative intent. The statutory text bars deductibility of losses emanating from "activities not engaged in for profit," not activities lacking an expectation of profit.[65] The regulation provides relevantly:

> The determination whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Although *a reasonable expectation of profit is not required,* the facts and circumstances must indicate that the taxpayer entered into the activity or continued the activity *with the objective of making a profit . . . .*[66]

In the case at bar, the Tax Court conceded that a taxpayer need not show an expectation of profit that could be deemed reasonable.[67] It ruled that Dreicer could not deduct the losses in question because, it said, he did not have "a bona fide expectation" of profit from the action from which those losses arose:

> [T]he record in this case shows beyond a doubt that there was no possibility of [Dreicer] realizing sufficient profit from his writing and lecturing activities to recoup the very large losses sustained in the preceding years, and therefore, we are convinced that, during the years in issue, [Dreicer] could not have had a *bona fide*

*expectation* of realizing a profit from such activities.[68]

Indeed, the notion that such an expectation was a precondition to deductibility pervades the court's treatment of Dreicer's claim thereto,[69] and became the decisive factor in its ruling:

> In conclusion, after a careful review of all the facts and circumstances of this case, we hold that [Dreicer's] activity of traveling around the world allegedly to obtain material for a transcript was an "activity . . . not engaged in for profit" within the meaning of section 183(a), since he did not have a *bona fide expectation* of profit. Accordingly, the losses incurred by him during 1972 and 1973 are not deductible.[70]

■ By thus hinging its decision on Dreicer's profit expectations instead of his profit objectives, the Tax Court utilized the wrong test. The statute, its legislative history and the implementing Treasury regulation make explicit that the objective, not the expectation, of making a profit is to govern determinations on whether a taxpayer is engaged in a business or a hobby, and the two criteria are not the same. One may embark upon a venture for the sincere purpose of eventually reaping a profit but in the belief that the probability of financial success is small or even remote. He therefore does not really expect a profit, but nonetheless is willing to take the gamble.[71] Under the Tax Court's test of "bona fide expectation of profit," losses incurred in the enterprise could not be deducted. Yet it cannot be gainsaid that "the activity actually is engaged in for profit"[72]—that it was undertaken "with the objective of mak-

---

64. 115 Cong.Rec. 40900 (1969) (House); 115 Cong.Rec. 40718 (1969) (Senate). See *Jasionowski v. Commissioner, supra* note 8, 66 T.C. at 321; *Benz v. Commissioner,* 63 T.C. 375, 383 (1974).

65. I.R.C. § 183, quoted in relevant part *supra* note 7.

66. Treas.Reg. § 1.183–2(a) (1973) (emphasis supplied).

67. See *Dreicer v. Commissioner, supra* note 3, 48 T.C.M. (P–H) at 1538.

68. *Id.* at 1539 (emphasis supplied).

69. *Id.* at 1539, 1540, 1541, 1542.

70. *Id.* at 1542 (emphasis supplied).

71. See text *supra* at note 61.

72. See text *supra* at note 61.

ing a profit." [73]  We do not say that Dreicer's case is equivalent; that is for the Tax Court in the first instance, and we intimate no view on the merits.  We do say that Dreicer's claims of deductibility are to be evaluated by proper legal standards.

The decision appealed from is accordingly reversed and the case is remanded to the Tax Court for further consideration in light of this opinion.

*So ordered.*

**73.**  See text *supra* at note 66.