**ESTATE OF Elizabeth L. POWER, et al., Petitioners, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent, Appellee.**

**No. 83–1911.**

United States Court of Appeals, First Circuit.

Argued May 11, 1984.

Decided June 21, 1984.

James B. Tiffin, Boston, Mass., with whom Tiffin & Tiffin, Boston, Mass., was on brief, for appellants.

Mary L. Fahey, Atty., Tax Div., Washington, D.C., with whom Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Atty., Tax Div., and Richard W. Perkins, Atty., Tax Div., Dept. of Justice, Washington, D.C., were on brief, for appellee.

Before COFFIN and BOWNES, Circuit

Judges, and PETTINE,[*] Senior District Judge.

BOWNES, Circuit Judge.

At all times relevant to this case, Elizabeth L. Power was a taxpayer residing in Middlesex County, Massachusetts, who used a fiscal year ending June 30 for federal income tax purposes. The Commissioner of Internal Revenue determined deficiencies in her reported income taxes for fiscal years 1972, 1973, 1974 and 1977 totalling $66,797.20. Mrs. Power petitioned the Tax Court for a redetermination. The sole issue before the Tax Court was whether Mrs. Power's horse breeding activity was "engaged in for profit" within the meaning of I.R.C. § 183 so that losses in connection with that activity could be offset against income from other sources during the years in question. The Tax Court found that the horse breeding was not engaged in for profit, and upheld the Commissioner's determination of deficiency. *Estate of Elizabeth L. Power v. Commissioner*, 1983 T.C.M. (P–H) ¶ 83,552 (1983). This appeal followed.[1]

The Tax Court found the relevant facts as follows. Mrs. Power inherited a farm of some 500 acres upon her mother's death in 1941, and, with her husband, began to work much of the land as commercial fruit orchards. Although her parents had kept horses and constructed a riding ring on the property, Mrs. Power's participation in the family riding had been minimal. In the early 1950's, however, she considered the possibility of raising horses, for the farm was already equipped with the riding ring and pasture fields. After attending the National Morgan Horse Show in 1952, Mrs. Power purchased several Morgans and began to show them under the name "Waseeka Farm"; she also expanded the existing facilities and constructed new stalls on the farm. She employed a respected trainer named John Lydon beginning in the early 1960's; when Lydon left, the post was filled successively by his daughters Ginny and Priscilla until the horses were disposed of in 1977. In addition to the trainer, Mrs. Power employed two farmhands to care for the horses. She herself neither rode the horses nor took part in their training; she did, however, hold regular weekly meetings at which the total business of the farm was discussed. Her attorney kept meticulous records of her farming and household expenses, and her daughter helped manage the horse breeding and showing activities.

Mrs. Power attended shows in which her horses were entered, and her daughter and granddaughter rode the horses being shown. Waseeka Farm won considerable acclaim, particularly with respect to a stallion named Nocturne who was highly prized for his qualities as a show horse and sire. Nocturne's breeding career ended, though, when he unexpectedly became sterile in 1972; his projected stud fees would have amounted to $10,000 or $15,000 per year during the period in question.

For fiscal years 1958 through 1970, Mrs. Power reported an unbroken sequence of farm losses arising from the combined orchard and horse activities.[2] Her tax returns for 1964 and 1965 were audited; the Commissioner initially challenged the deductibility of the farm losses resulting from the horse breeding activity, but after an appellate conference accepted the returns as filed. After 1970, Mrs. Power gave up the orchard business, but continued to report farm losses from horse breeding alone for fiscal years 1971 through 1974. Her tax returns for the last two years were audited and her farm losses challenged on the ground that the horse breeding activity was not engaged in for

---

[*] Of the District of Rhode Island, sitting by designation.

**1.** At some point before trial, Mrs. Power was replaced as the named petitioning party by her estate and two conservators, appellants here. Had we reason to review the Tax Court's finding that Mrs. Power died before trial, we would reject it as clearly erroneous. Despite its effect on Mrs. Power and her family, however, the finding does not affect our disposition of the case.

**2.** The farm loss figures for 1967 do not appear in the record.

profit. Mrs. Power elected under I.R.C. § 183(e) to postpone resolving the issue until the close of fiscal year 1977.

After the audit, Mrs. Power's daughter, Susan Annis, prepared a memorandum analyzing Waseeka Farm's income and expenses, and projected an estimated potential profit of $5,510 for the period between October 1, 1974 and September 30, 1975. This figure, however, did not take account of

any legal fees, bookkeeping chgs., postage, photographs, secretarial costs, registration, or maintainance [sic] on such equipment as the tractor, horse trailer, etc.

The memo also noted that it would be a "challenge" to increase income sufficiently to show even a small yearly net profit. As it turned out, Mrs. Power reported positive farm income for fiscal years 1975 through 1977 from horse breeding. The apparent showing of profit, however, reflected in reality no more than an unexplained change from accrual accounting with inventories to cash accounting without inventories; the gross income from horse sales was reported with no offsetting deduction for the cost of the horses sold. Under the prior accounting method, the Commissioner calculated that the horse operations would have yielded net losses in each year.

From 1958 through 1977, Mrs. Power's main source of income was a trust established by her parents: the trust, along with other investments, provided her with an average annual income of over $60,000. During the same period, she realized capital gains of more than $400,000, including gains in fiscal years 1973 and 1974 from the sale of land.

■ The issue on appeal is whether the Tax Court was correct in determining that Mrs. Power's horse breeding was an activity "not engaged in for profit" under I.R.C. § 183. Section 183(c) defines the term "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 [trade or business expense] or under paragraph (1) or (2)

of section 212 [expense for production of income]." An individual is allowed only the following deductions with respect to activities not engaged in for profit:

(1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and

(2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1).

I.R.C. § 183(b). Thus, section 183 in effect disallows deductions for losses incurred in an individual's activities which are not engaged in for profit. The taxpayer has the burden of proving that an activity is engaged in for profit. *See Golanty v. Commissioner*, 72 T.C. 411, 426 (1979), *aff'd without opinion*, 647 F.2d 170 (9th Cir. 1981).

Appellants first contend that Mrs. Power is entitled to a presumption that her horse breeding activity was engaged in for profit under section 183(d). That section provides:

If the gross income derived from an activity [consisting in major part of the breeding, training, showing, or racing of horses] for 2 or more of the taxable years in the period of [7] consecutive taxable years which ends with the taxable year exceeds the deductions attributable to such activity (determined without regard to whether or not such activity is engaged in for profit), then, unless the Secretary establishes to the contrary, such activity shall be presumed for purposes of this chapter for such taxable year to be an activity engaged in for profit.

Having elected to postpone a determination as to the presumption until the close of fiscal year 1977 under section 183(e)(1), Mrs. Power is deemed not to have engaged

in horse breeding before July 1, 1970, for purposes of that determination. I.R.C. § 183(e)(1). Moreover, if it is established that gross income from her horse breeding for two or more fiscal years between 1971 and 1977 exceeded deductions attributable to that activity, then the section 183(d) presumption applies to each year in the seven-year period. I.R.C. § 183(e)(2).[3]

The only basis on which a finding of net profit from Waseeka Farm could arguably be shown is the sale of land in 1973 and 1974 resulting in capital gains of $67,188.30 and $151,695.76. If the capital gains were set off directly against the farm losses of $36,241.92 and $38,489.44 in the respective years, there would be a net profit for both years. *See* Treas.Reg. § 1.183–1(b)(4). The Tax Court, however, expressly found that "the operation of the horse farm and the holding of the land were separate activities," and accordingly refused to consider the proceeds from the land sales as gain offsetting the farm losses. The question whether several activities are to be considered separately or together for purposes of section 183 was a question of fact for resolution by the Tax Court in light of "all the facts and circumstances of the case." Treas.Reg. § 1.183–1(d)(1). Specifically,

> [w]here land is purchased or held primarily with the intent to profit from increase in its value, and the taxpayer also engages in farming on such land, the farming and the holding of the land will ordinarily be considered a single activity only if the farming activity reduces the net cost of carrying the land for its appreciation in value. Thus, the farming and

holding of the land will be considered a single activity only if the income derived from farming exceeds the deductions attributable to the farming activity which are not directly attributable to the holding of the land . . . .

*Id.* At no time did the farming operation produce sufficient income to reduce the net cost of holding the land. The Tax Court relied on appellants' statements that the land in question was held for appreciation and sold when it was no longer necessary for horse breeding. At trial, Susan Annis testified that during the five years before it was sold the land "wasn't really being used for much of anything" due to a reduction in the number of horses being boarded. There was also undisputed testimony that the land had been acquired for fruit orchards rather than horse breeding,[4] and that it was later used only for the "overflow" of brood mares. The evidence was sufficient to establish that the land was not held as part of the horse breeding activity, *see* Treas.Reg. § 1.183–1(c)(3), and that the gain from the land sales could not be used to offset the farm losses, *see* Treas.Reg. § 1.183–1(d)(1). The Tax Court's conclusion that the section 183(d) presumption was unavailable to Mrs. Power is not clearly erroneous. *See Bessenyey v. Commissioner*, 379 F.2d 252, 256–57 (2d Cir.), *cert. denied*, 389 U.S. 931, 88 S.Ct. 293, 19 L.Ed.2d 283 (1967).

Appellants also contend that even without the benefit of the section 183(d) presumption they met their burden of proving that Mrs. Power engaged in horse breeding for profit during the years in question.

---

**3.** Under I.R.C. § 183(e)(2), the § 183(d) presumption would apply to each fiscal year from 1971 through 1977 if farm income exceeded farm deductions in any two of those years. Mrs. Power reported net farm profits in 1975–77; but the Commissioner recomputed her figures under the accounting method she had used in previous years, and determined that the farm showed net losses in each year. Implicit in the Tax Court's reasoning is a rejection of Mrs. Power's calculations in favor of the Commissioner's. This was entirely proper under the circumstances, for appellants offered no explanation for the change in accounting method

after fiscal year 1974, an audit year, nor did they obtain IRS consent for the change as required under I.R.C. § 446(e); indeed, they did not question the accuracy of the Commissioner's figures.

**4.** The Tax Court erred when it found that the land sold in 1973 and 1974 was part of a 500-acre farm that Mrs. Power inherited from her parents. The record indicates that Mrs. Power purchased the land in question for fruit orchards in the 1940's. The method of acquisition is of no legal consequence here.

The determination whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the objective of making a profit. Treas.Reg. § 1.183–2(a); *see Dreicer v. Commissioner*, 665 F.2d 1292, 1297–1300 (D.C.Cir.1981); *Golanty*, 72 T.C. at 425–26. The Treasury Regulations set out nine relevant factors which should be taken into account in determining whether an activity is engaged in for profit: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. The enumerated factors are not exclusive, nor is any single factor or combination of factors determinative. Treas.Reg. § 1.183–2(b).

■ Four considerations appear to have determined the Tax Court's conclusion that Mrs. Power did not engage in horse breeding for profit during the years in question. First, the court looked at the "unbroken string of substantial losses stretching back over decades" as strong evidence that a profit objective was lacking. This corresponds to the sixth factor in the Regulations:

A series of losses during the initial or start-up stage of an activity may not necessarily be an indication that the activity is not engaged in for profit. However, where losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status such continued losses, if not explainable, as due to custom-

ary business risks or reverses, may be indicative that the activity is not being engaged in for profit.

Treas.Reg. § 1.183–2(b)(6); *see Bessenyey v. Commissioner*, 45 T.C. 261, 274 (1965), *aff'd*, 379 F.2d 252 (2d Cir.), *cert. denied*, 389 U.S. 931, 88 S.Ct. 293, 19 L.Ed.2d 283 (1967) ("the goal must be to realize a profit on the entire operation, which presupposes not only future net earnings but also sufficient net earnings to recoup the losses which have meanwhile been sustained in the intervening years"). The evidence showed that a horse breeding operation might not show a profit for the first ten years. Mrs. Power's losses, however, were uninterrupted for more than twice that length of time. Her operation did not compare favorably, for example, with John Lydon's horse raising business, which produced enough income to support a family with seven children. Although appellants stressed the unforeseeability of Nocturne's sterility and the untimely death of their last trainer as explanations for the losses, the court found that neither misfortune materially affected the lack of potential profitability of the horse breeding activity.

The second consideration mentioned by the court was the manner in which the activity was conducted, particularly with reference to Susan Annis's post-audit memorandum. Although meticulous records were kept and Mrs. Power was well advised in financial matters by her attorney and Susan Annis, the court found that the principal objective was to enable Mrs. Power to continue her horse breeding operation on a smaller scale without incurring unduly burdensome costs, not to turn the operation around and produce a profit. The court discounted Susan Annis's expressed profit objective in light of the undoubted incentive to show a profit for tax purposes in the years following the 1973 and 1974 audits. Thus, under the first factor in the Regulations as well, the court found no persuasive evidence of a profit objective.

The court also looked at the ninth factor in the Regulations, *viz.*, elements of per-

sonal pleasure, and found that Mrs. Power "took considerable pleasure and satisfaction in the operation of Waseeka Farm and the ownership of her prize winning Morgan horses." Not only did she attend shows, but also her daughter and granddaughter rode the horses at the shows. As has been stated elsewhere, "we may well assume that she would have been pleased to make a profit, but ... [h]er rewards consisted of personal satisfaction in the activity." *Bessenyey*, 45 T.C. at 275.

Finally, the court noted that Mrs. Power's regular and substantial trust income enabled her, without lowering her standard of living, "to persist in an activity which, although enjoyable, was consistently losing money, and had no real prospects of ceasing to do so." This is clearly a valid consideration under the eighth factor in the Regulations:

> Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved.

Treas.Reg. § 1.183-2(b)(9).

Appellants argue that the Tax Court failed to give due consideration to countervailing factors such as the potential profits from horse sales and the horse breeding expertise of Mrs. Power and her advisors. The court's conclusion concerning profit objective, however, is a finding of fact which will be reversed only if clearly erroneous. I.R.C. § 7482(a); *Dreicer*, 665 F.2d at 1296 n. 36. Having determined that the court properly considered the facts under the objective standards set out in Treasury Regulation § 1.183-2(b), and that its conclusions are adequately supported in the record, we decline to reweigh the evidence. In closing, we reject summarily appellants' notion that the Commissioner was estopped by his audit concessions in 1964 and 1965 to raise the issue of profit objective in 1973 and 1974. *See Harrah's Club v. United States*, 661 F.2d 203, 205 (Ct.Cl.1981).

*The judgment of the Tax Court is affirmed.*