PATRICK H. FAULKNER AND JOYCE A. FAULKNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Faulkner v. Commissioner
Docket No. 10487-84.
United States Tax Court
T.C. Memo 1985-536; 1985 Tax Ct. Memo LEXIS 96; 50 T.C.M. (CCH) 1314; T.C.M. (RIA) 85536; October 21, 1985. Neil J. Driscoll, for the petitioners. Donna F. Herbert, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $3,042.03 and additions to tax under section 6653(a)[1] in the amount of $152.10 in pertitioners' [2] Federal income tax for 1980. The issues for decision are: [3]
1. Whether petitioner's horse-breeding activity constituted an "activity not engaged in for profit" within the meaning of section 183(a); 2. If petitioner's horse-breeding activity was one engaged in for profit, whether petitioners substantiated the expenses associated therewith; 3. Whether petitioners have substantiated deductible expenses associated with petitioner's *99 business as a manufacturer's representative; 4. Whether petitioners are entitled to investment tax credits for assets purchased for petitioner's horse-breeding activity and manufacturer's representative business; 5. Whether petitioners have established that their gross income was overstated by $997 on their original return; 6. Whether petitioners are liable for additional self-employment tax in the amount of $1,020.03; and 7. Whether petitioners are liable for additions to tax resulting from negligence or intentional disregard of rules and regulations. *100 FINDINGS OF FACT Petitioners Patrick H. Faulkner and Joyce A. Faulkner, who were legal residents of Olalla, Washington, when they filed their petition, filed a joint Federal income tax return for 1980 (original return or Form 1040) with the Internal Revenue Service Center, Ogden, Utah. They subsequently filed a "corrected" income tax return and an amended income tax return (amended return or Form 1040X) with the District Director, Internal Revenue Service, Seattle, Washington. Petitioner became employed in July 1980 as a manufacturer's representative for Welenco Manufacturing, Inc., a company which makes fireplace inserts, after leaving his position as product manager with the George Scofield Company in May of that year. During 1980, petitioner's business as a manufactuerer's representative (fireplace business) required 50-60 hours per week of petitioner's time and frequent travel throughout Oregon and Western Washington. Petitioner's business trips sometimes required him to be out of town overnight. Petitioner became involved in breeding quarter horses in 1979 and continued in this activity up to the time of trial. In 1980, petitioner owned three brood mares: "Counterspark, *101 " which he had purchased with a foal in 1979, and "Kitty Hawk" and "Miss Rosebud McQ," purchased in 1980. At the time of trial, petitioner owned one brood mare, "Bar Leo's Doll," an unregistered filly, a 2-year old gelding, and a stallion which had never been used for breeding purposes, having sold the mares "Counterspark" and "Kitty Hawk." Although petitioner attended horse shows in 1980, he did not begin to show his horses until 1983, at which time he hired someone else to show them. Petitioner had no gross income from his horse-breeding activities in 1980. Gross income earned in later years resulted from the sale of two brood mares and a foal and from boarding horses for other owners, and not from stud fees. [4] At no time between 1979 and the time of trial did petitioner make a net profit from his horse-breeding activities. *102 Petitioner conducted the horse-breeding activity on a 2-1/2-acre parcel of land owned by him during 1980. Located on the 2-1/2-acre tract were an eight-stall barn, a circle pen and "hot walker" for exercising horses, a separate warehouse/office building, and petitioners' personal residence. In addition, petitioner owned a 5-acre parcel of undeveloped land and had available for his use 20 acres of pastureland owned by his daughter, Terressa Bowman. The warehouse/office building located on petitioner's land was used in both of petitioner's activities: the horse-breeding operation and the fireplace business. Petitioner, with the help of his son's company, constructed the building himself and used it as an office and a storage facility for hay and inventory. In April 1980, petitioners purchased a 1980 Ford truck and a 1979 Audi. Petitioners also owned a 1975 Ford pickup truck, driven primarily by petitioner Joyce Faulkner, and petitioners or their son owned an El Camino, which petitioner Patrick Faulkner did not drive during 1980. The 1980 Ford truck was a three-quarter ton flatbed which had been customized with a "towing package," [5] heavy springs, custom wheels, and decorative *103 stripes. Petitioner used the truck in the fireplace business to haul stoves and to exhibit fireplace inserts at the Puyallup Fair and also in the horse-breeding operation to pull the horse trailer. Petitioner used the 1979 Audi primarily in the fireplace business for traveling through Western Washington and Oregon, although he also drove it to horse shows as a spectator and to horse sales. Petitioner owned a recreational trailer called a Prowler, which he used in the fireplace business as living quarters when staying overnight at fireplace shows. [6]
Petitioners deducted the following expenses from the fireplace business on schedule C of their original and amended returns for 1980: Form
Form
Expense
1040
1040X
Car and truck expenses [1]
$2,564
$ 2,058
Depreciation
2,764
2,505
Insurance
387
863
Interest
220
220
Office supplies
36
242
Postage
43
37
Supplies
187
1,305
Taxes
563
374
Telephone
713
611
Travel and entertainment
1,702
2,416
Utilities
158
327
Advertising
278
Bank charges
151
Dues and publications
67
Laundry and cleaning [2]
17
Repairs
598
Contract services
838
Hand tools
11
License
379
Parts
64
Security
156
$9,337
$13,517
*104 Of the above schedule C expenses, $1,905.21 were incurred prior to July 1, 1980. Petitioners reported the following expenses from the horse-breeding activity on schedule F of their original and amended 1980 tax returns: Form
Form
Expenses
1040
1040X
Rent - pasture
$ 220
$ 202
Feed
552
470
Breeding fees
81
Veterinary fees
293
177
Dues
15
15
Depreciation
158
1,058
Supplies
43
Gas
493
Insurance
41
Utilities
91
Landclearing
163
Travel and entertainment
475
License
40
$1,319
$3,268
Petitioners maintained no formal books or records with respect to either the horse-breeding activity or the fireplace business, but used their checking account to keep track of income and expenditures. At trial, petitioner offered only canceled checks and VISA charge account statements into evidence to verify the foregoing expenses. Petitioners claimed depreciation deductions on their original and *105 amended returns with respect to the following assets using the following bases: Form 1040
Form 1040X
(basis)
(basis)[1]
Schedule C
1980 truck
$6,608.80
$9,173.00
Office equipment
432.52
432.00
Office building
3,500.00
3,500.00
Transportation
(1975 truck)
5,259.00
1979 Audi
12,274.00
Schedule F
Breeding stock
(brood mare)
$1,000.00
$ 650.00
Exercising saddle
120.00
120.00
Breeding stock
(brood mare)
500.00
500.00
Equipment
395.00
Mobile warehouse
5,899.00
Petitioners claimed investment tax credits on their original and amended returns with respect to the following assets using the following bases: Form 1040
Form 1040X
(basis)
(basis)
1980 Ford flatbed truck
$8,261
$ 9,173
1979 Audi
12,274
Office equipment
432
Breeding stock (horse)
500
$8,261
$22,379
OPINION 1. Horse-Breeding Activity
The first two issues are whether petitioner's horse-breeding activity constituted an activity not engaged in for profit within the meaning of section 183(a), and, if it was engaged in for profit, whether *106 petitioners have substantiated the expenses associated therewith. Section 183(a) provides generally that, except as otherwise provided for in that section, individual taxpayers will not be allowed deductions which are attributable to activities that are "not engaged in for profit." Section 183(c) defines "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 [trade or business] or paragraph (1) or (2) of section 212 [expenses for production of income]." Further guidance as to the meaning of the phrase "engaged in for profit" is found in section 1.183-2(a), Income Tax Regs., which provides: The determination whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Although a reasonable expectation of profit is not required, the facts and circumstances must indicate *107 that the taxpayer entered into the activity, or continued the activity, with the objective of making a profit. In determining whether such an objective exists, it may be sufficient that there is a small chance of making a large profit. * * * In determining whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of his intent. The regulations set forth nine criteria which "should normally be taken into account" in determining whether an activity is engaged in for profit.[7] The ultimate resolution of the issue does not depend on any particular factor or combination of factors, but on all the facts and circumstances of the case. Engdahl v. Commissioner,72 T.C. 659, 666 (1979); Allen v. Commissioner,72 T.C. 28, 34 (1979). For an activity to be engaged in for profit, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the actual and honest objective of making a profit. Dreicer v. Commissioner,78 T.C. 642, 645 (1982), *108 affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Applying that standard to the facts of the instant case, we find that petitioner's horse-breeding activity was not one engaged in for profit within the meaning of section 183(a). Rather, we are convinced that petitioner's quarter horse activity was a hobby in which he engaged for his personal enjoyment and satisfaction. The activity was not a trade or business and was not carried on for the production of income. First, *109 petitioner's manner in carrying on the activity tends to show that he lacked a profit motive. He failed to maintain any formal books or records with respect to this activity and produced no receipts, other than canceled checks, to substantiate claimed expenditures. Although petitioner alleges that he entered the business in 1979, some 6 years before the date of the trial, he had no records or precise recollection of the amount of any income from the activity. See n. 4, supra.Nor did he present any meaningful projections showing how he could expect to make money from the activity in the future. Petitioner did not actively advertise or show his horses during 1980. In short, petitioner's horse-breeding activity had none of the "trappings of a business." Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). The expertise of the taxpayer or his advisors is another factor to be considered. At trial, petitioner admitted that he "needed a little bit of training" on the showing of animals. About the only steps he took to equip himself to show his horses was to attend shows and subscribe to the Quarter Horse Association *110 magazine. While subscribing to a trade magazine and attending horse shows may indicate petitioner's interest in his hobby, such activities do not provide expertise in the horse-breeding field. By his own testimony, petitioner had not gained sufficient expertise to show his horses even after 4 years in the horse-breeding activity. Furthermore, he offered no evidence as to the identity or expertise of the persons he hired to show his horses. In addition, the time and effort devoted to the activity is a relevant factor. Section 1.183-2(b)(8), Income Tax Regs., states that: Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved. Petitioner earned substantial income from his fireplace business in 1980, while his expenditures from his horse-breeding activity offset that income. Furthermore, petitioner spent most of his time and effort on his fireplace *111 business, which required 50-60 hours of work per week and frequent business trips throughout Oregon and Western Washington. Another factor for consideration is the expectation that the assets used in the activity may appreciate in value. Petitioner testified that his horse-breeding operation had actually appreciated in value from $3,000 or $4,000 in 1980 to approximately $80,000 to $90,000 at the time of trial. [8] Petitioner's conclusion is based only upon his own unsupported testimony and we do not find it convincing. Petitioner apparently arrived at his conclusion as to the increas in values by referring to what he testified were his local real estate tax valuations for his residence and for the 2-1/2 acres on which his residence, office building, barn, circle pen, and "hot walker" were crowded. No documents corroborating the valuations were offered in evidence, and we are not convinced as to the accuracy or reliability of the figures given. Moreover, the evidence indicates that petitioner lived on the property before 1979 and did not buy or hold any of the land for his horse-breeding activity. Clearly, therefore, the appreciation, if any, in the land's value cannot properly *112 be attributed to that activity. Cf. sec. 1.183-1(d)(1), Income Tax Regs.; [9]Estate of Power v. Commissioner,736 F.2d 826, 829 (1st Cir. 1984), affg. a Memorandum Opinion of this Court. Furthermore petitioner offered no substantive proof other than his own generalized, uncorroborated statement of the value of his operation in either 1980 or at the time of the trial. Indeed, the facts tend to show a decrease in his quarter horse activity because petitioner owned only one mare of breeding age at the time of trial, having sold two of the brood mares he had owned in 1980. [10]
*113 Petitioner reported no gross income from his horse-breeding activity in 1980. In fact, he claimed a net loss with respect to this activity in each year from 1979 to 1984. Although petitioner testified that he had gross income from the horse-breeding operation in tax years 1981 through 1984, [11] much of that income resulted from boarding fees rather than from breeding activities. Petitioner argues that losses are not uncommon in the early years of a horse-breeding operation. However, during the 6 years petitioner has been breeding horses, he has made no affirmative changes geared to making the operation a profitable one. [12] Rather, petitioner sold two of his original brood mares and after 6 years owned only one mare of breeding age, thus reducing his chances of making a profit. [13] Although petitioner testified that he intended to "develop a * * * little better breed" of quarter horse, at the time of trial he owned only one mare that could contribute to the breeding process. [14]
*114 After considering the above factors, we conclude that petitioner's horse-breeding activities were not engaged in for profit within the meaning of section 183(a). Losses generated by an activity not engaged in for profit are deductible only to the extent allowed under section 183(b), which states: (b) Deductions Allowable.--In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed-- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1). Petitioner reported no gross income from his horse-breeding activities in 1980. Accordingly, no deductions taken in connection with this activity are allowed. Therefore, *115 we do not reach the second issue as to whether petitioners have properly substantiated the expenses associated with petitioner's horse-breeding activity. 2. Fireplace Business Deductions
The third issue for decision is whether petitioners have substantiated that they incurred $13,517 of deductible expenses in connection with petitioner's fireplace business. Petitioners have the burden of proof as to the deductibility and substantiation of such expenses. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
We turn first to petitioners' claim of travel and entertainment expenses. Section 162(a)(2) allows a deduction for all ordinary and necessary "traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business." However, travel and entertainment expenses deductible under section 162(a)(2) are not allowed unless properly substantiated. Section 274(d)(1) states: (d) Substantiation *116 Required.--No deduction or credit shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), * * * unless the taxpayer substantiates by adequate contemporaneous records (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property, or receiving the gift. The Secretary may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. Under this provision each element of petitioners' claimed expenses must be substantiated and any expenditure not substantiated will be disallowed in full. Buddy Schoellkopf Products, Inc. v. Commissioner,65 T.C. 640, 644-645 (1975); Sanford v. Commissioner,50 T.C. 823, 828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). *117 Where the taxpayer fails to comply with the adequate records requirement, the taxpayer may establish the elements of an expenditure ( sec. 1.274-5(c)(3), Income Tax Regs.)-- (i) By his own statement, whether written or oral, containing specific information in detail as to such element; and (ii) By other corroborative evidence sufficient to establish such element. If such element is * * * the cost, time, place, or date of an expenditure, the corroborative evidence shall be direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witness setting forth detailed information about such element * * *. In the instant case, petitioners were unable to produce sufficient evidence to satisfy the elements of section 274(d), as petitioner failed to keep any records or books whatsoever with respect to his fireplace business. Although the above regulation permits petitioners to substantiate each element of an expenditure through an oral or written statement and other corroborative evidence, the evidence in the record is insufficient *118 to establish each element of any of the expenditures. As to their travel and entertainment expenses, petitioners introduced VISA charge account statements containing lists of charges to various restaurants, motels, and gasoline stations. [15] Petitioner testified generally as to the business purpose of the meals and trips, and identified persons he had entertained; however, petitioner failed to substantiate these elements by further evidence corroborating his own statement. Consequently, petitioners have failed to show that they have complied with the substantiation requirements of section 274(d) for travel and entertainment expenses. [16]
*119 Petitioners claimed additional expenses in connection with two trucks and an automobile. For these expenses, petitioners relied upon VISA charge account statements and canceled checks to substantiate expenditures claimed in relation to the vehicles. As was the case with the foregoing travel and entertainment expenses, petitioner testified generally as to the business purpose of the vehicle expenses, but failed to substantiate the business purpose element with corroborating evidence as required by section 274(d) and the regulations thereunder. Petitioner did not show what part, if any, of his automobile expenses constituted local transportation costs and what part was away-from-home travel expenses and provided no basis for an allocation. [17] Consequently, we find that petitioners are not entitled to deduct amounts claims for gasoline, repairs, parts, insurance, licenses, and miscellaneous expenses in connection with the three vehicles.
Amounts claimed for depreciation, interest, and taxes need not be substantiated under section 274(d). Section 274(d), (f); Henry Schwartz Corp. v. Commissioner,60 T.C. 728, 744 (1973). *120 Petitioners claimed depreciation deductions for a 1975 Ford truck, a 1980 Ford truck, and a 1979 Audi automobile. We think that petitioner used the 1980 Ford truck and the 1979 Audi in his fireplace business, but that the 1975 Ford pickup truck was used by Mrs. Faulkner for her personal use. The depreciation deduction with respect to the 1975 Ford truck is therefore disallowed. Petitioners assert that both the 1980 truck and the 1979 Audi were used exclusively for business. [18] Although we do not think that petitioner used both vehicles exclusively for business, we may approximate allowable deductions "bearing heavily [if we choose] on the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930). Based on the record before us, we have approximated petitioners' deductions relating to the vehicles as follows: 1980 Ford Truck
1979 Audi
Depreciation
$389.19
520.77
Interest
$211.53
Taxes
*121 On their amended return, petitioners claimed the following additional business expenses: Depreciation [1]
$ 148
Office supplies
242
Postage
37
Supplies
1,305
Taxes
374
Telephone
611
Utilities
327
Advertising
278
Bank charges
151
Dues and publications
67
Contract services
838
Hand tools
11
Security
156
Total
$4,545
Petitioners substantiated deductible business expenses as follows: Depreciation
$ 92.34
Office supplies
1.42
Postage
9.02
Supplies
459.39
Taxes
37.46
Telephone
Utilities
46.27
Advertising
Bank charges
Dues and publications
12.54
Contract services
800.00
Hand tools
Security
Total
$1,458.44
3. Investment Tax Credits
The fourth issue for consideration is whether petitioners are entitled to investment tax credits claimed for assets purchased for petitioner's horse-breeding activity and fireplace business. Section 38(a) provides for an investment tax credit with respect to "section 38 property," defined in section 48(a)(1) as follows: (a) Section 38 Property.-- (1) In general.--Except as provided *122 in this subsection, the term "section 38 property" means-- (A) tangible personal property * * * * * * Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 3 years or more. * * * Depreciation is allowable with respect to property used in a trade or business or held for the production of income. Section 167(a). We have previously disallowed depreciation deductions for assets used in petitioner's horse-breeding activity on the basis that the activity was not engaged in for profit. Accordingly, we must disallow the investment tax credits claimed on those assets as well. As regards petitioner's fireplace business, we have allowed depreciation deductions for the 1980 Ford truck, 1979 Audi, office equipment, and office building which were used in that business. We therefore allow partial investment tax credits for those assets which constitute tangible personal property as follows: [19]
Investment Tax
Asset
Depreciable Basis
Credit Allowed
1980 Ford
$8,255.70
$ 544.88
1979 Audi
10,046.60
663.07
Office equipment
349.43
22.86
$1,230.81
*123 4. Income Overstatement
The fifth issue for consideration is whether petitioners have established that they overstated their 1980 gross income by $997 on their original return. [20] Petitioners argue that because they used a bank deposits method of computing income for petitioner's fireplace business, a $1,000 [21] transfer of funds from petitioners' savings account into their checking account was inadvertently included in their gross income for 1980. In support of their argument, petitioners submitted bank statements for the month of June 1980, which indicated a withdrawal of $1,000 from petitioners' savings account on June 4, 1980, and a $1,000 deposit into petitioners' checking account on the same day. Petitioner testified that the transaction was a transfer of funds and not income, and that the error want undiscovered until petitioners were preparing their amended return. We find that petitioners have met their burden of proof as to this issue, and we therefore *124 find that petitioners overstated their 1980 gross income on their original return by $997. 5. Self-Employment Tax
The sixth issue for consideration is whether petitioners are liable for additional self-employment tax in the amount of $1,020.03. [22] The resolution of this issue depends on our findings as to the amount of petitioners' net profit on schedule C of their income tax return. A recomputation of their self-employment tax will be necessary. 6. Additions to Tax
The final issue for determination is whether petitioners are liable for additions to tax under section 6653(a). Section 6653(a) provides for an addition to tax where any part of any underpayment is *125 due to negligence or intentional disregard of rules and regulations. Petitioners bear the burden of proving that the addition has been improperly imposed. Enoch v. Commissioner,57 T.C. 781, 802 (1972). Section 6001 and the regulations thereunder require petitioners to keep adequate records. The record reveals that petitioners failed to keep adequate records with respect to both the horse-breeding operation and the fireplace business. Accordingly, we sustain respondent's determination under section 6653(a). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. ↩
2. The issues for decision are primarily concerned with petitioner Patrick H. Faulkner's horse-breeding operation and manufacturer's representative business. For this reason, petitioner will hereinafter be used to refer to petitioner Patrick H. Faulkner. ↩
3. Petitioners' original petition included no claim of income tax overpayment. In their amended petition, filed by leave of the Court, petitioners claimed an overpayment of $844.58 due to petitioners as partial refund of their 1979 taxes. Petitioners offered no evidence at trial and made no argument in their brief with respect to this claim. We therefore conclude that petitioners have abandoned their claim for overpayment.↩
4. Petitioner offered no proof to corroborate his testimony as to the amount and existence of gross income earned from his horse-breeding activity in years 1981 through 1984. Petitioner estimated his gross income for those years as "anywheres from $2500 a year to, oh, 1500 depending on what I sold that year and what services we were able to get paid for."↩
5. Petitioner explained "towing package" to mean an "electrical brake system and stuff for pulling a trailer with electric brakes."↩
6. Petitioner admitted that the "mobile warehouse" depreciated on his schedule F was, in fact, a recreational trailer used in his fireplace business. He provided no explanation for taking a deduction on schedule F for a trailer he asserts was used in a schedule C business.↩
1. Petitioner conceded at trial that a check for $28.53 to Fitzgerald Ford was a nondeductible personal expense. ↩
2. Petitioner conceded at trial that the $17 laundry and cleaning expense was a nondeductible personal expense.↩
1. The parties stipulated to the bases of the 1980 truck and the 1979 Audi.↩
7. The nine criteria are: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), Income Tax Regs.↩
8. Petitioner testified that the 2-1/2-acre parcel on which he conducts the horse-breeding activity was worth $140,000 to $150,000 at the time of trial. That sum, however, included petitioners' personal residence valued at $60,000 at that time. He concluded that the difference between the amounts ($80,000--$90,000) represented the value of the activity. ↩
9. Sec. 1.183-1(d)(1), Income Tax Regs., provides: [w]here land is purchased or held primarily with the intent to profit from increase in its value, and the taxpayer also engages in farming on such land, the farming and the holding of the land will ordinarily be considered a single activity only if the farming activity reduces the net cost of carrying the land for its appreciation in value. Thus, the farming and holding of the land will be considered a single activity only if the income derived from farming exceeds the deductions attributable to the farming activity which are not directly attributable to the holding of the land * * *. ↩
10. At the time of trial, petitioner owned one brood mare, an unregistered filly, a gelding, and a stallion not being used as a stud.↩
11. See n. 4, supra.↩
12. See Engdahl v. Commissioner,72 T.C. 659, 667-668↩ (1979). 13. See Golanty v. Commissioner,72 T.C. 411, 428 (1979), affd. without published opinion 647 F.2d 170↩ (9th Cir. 1981). 14. See n. 10, supra.↩
15. The VISA statements reflected expenses incurred from Apr. through Dec. 1980. Petitioner was not officially employed as a manufacturer's representative for Welenco Manufacturing, Inc., until July 1, 1980. ↩
16. Petitioner also introduced a set of canceled checks which he testified represented "travel and entertainment" expenses; however, petitioner never testified as to the business purpose of these expenditures. Several of the canceled checks were made out to what appeared to be restaurants, but included no notation concerning their purpose. Others were made out to "W.S.L.C.B. Store #150" and contained the notation "wine." Petitioner testified that certain other checks made out to "Jeff Croom," "Heritage Fireplace," and "cash" were for cash to buy food at fireplace shows. While these checks might very well represent expenditures for entertainment, no showing has been made that these expenses had a business purpose. We find that petitioners have failed to comply with the sec. 274(d)↩ requirements with respect to these canceled checks.
17. Cf. Miller v. Commissioner,T.C. Memo. 1982-491↩.
18. Petitioners claimed depreciation deductions for the 1980 truck and the Audi on schedule C of their return; however, petitioner testified that he also used these vehicles in the horse-breeding operation to pull the horse trailer and attend horse shows, for example.↩
1. Item represents depreciation claimed for the office building and equipment.↩
19. The investment tax credits allowed reflect an approximation of petitioner's use of the assets in his fireplace business, pursuant to Cohan v. Commissioner,39 F.2d 540↩ (2d Cir. 1930).
20. Petitioners reported schedule C gross income as follows: $18,132 on their original return; $17,135 on their amended return. ↩
21. The discrepancy in schedule C gross income was reported as $997 rather than $1,000 as a result of rounding off the deposits.↩
22. Respondent asserts that should it be sustained on each issue, petitioners would be liable for $1,020.03 in additional self-employment tax.↩