T.C. Memo. 1996-417

UNITED STATES TAX COURT

STEVEN F. AND KATHRYN A. DAWSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9407-94.                    Filed September 17, 1996.

Steven F. Dawson and Kathryn A. Dawson, pro sese.

<u>Timothy F. Salel</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  By notice dated March 7, 1994, respondent
determined the following deficiencies, additions, and penalty
with respect to petitioners' 1988 and 1989 Federal income tax:

| Year | Deficiency | Additions To Tax | | Penalty |
| | | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6662(a) |
| --- | --- | --- | --- | --- |
| 1988 | $14,921.60 | $3,730.40 | $746.08 | -- |
| 1989 | 3,387.00 | 846.75 | -- | $451.20 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issue for decision is whether petitioners are entitled to certain deductions relating to their horse training and breeding activity (the Activity)[1] for 1988 and 1989, and if petitioners are not entitled to deductions, whether they are liable for additions to tax and a penalty.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The Stipulation of Settled Issues is incorporated by this reference.

Petitioners resided in Riverside, California, when the petition in this case was filed. Petitioners were divorced in 1989.

Petitioners have three children, Jeanette, Joshua, and Ann. During the years in issue Steven F. Dawson was a full-time employee of the Southern Pacific Railroad, where he worked the graveyard shift (i.e., 11 p.m. to 7 a.m.) as a pipe fitter. He also devoted about 20 hours a week to his carpet cleaning business. Mrs. Dawson, who was a professional bookkeeper during

---

[1] The Activity refers to Mr. and Mrs. Dawson's horse training and breeding activity in 1988 and Mr. Dawson's horse training and breeding activity in 1989.

the years in issue, maintained the books and records for the carpet cleaning business.

In 1982, Mr. Dawson purchased some Arabian horses for training and breeding. After about 4 years, he sold the horses because it became apparent to him that this endeavor would not be profitable.

In 1987, Mr. Dawson approached Mil Barton about the prospect of entering into the business of breeding and training paint horses. Mr. Barton had been actively involved in this business for more than 40 years. He was a competition judge for the American Quarter Horse Association for 26 years and for the American Paint Horse Association for 20 years. Mr. Dawson, after discussing the paint horse business with Mr. Barton, purchased three paint horses. One was a stud colt named "Hot Twist". The other two were brood mares named "Kate Dillon" and "Dynamic King Bar". After the sale, Mr. Dawson continued to consult with Mr. Barton on how to train and breed the horses.

Mr. Dawson, who was not qualified to train horses, hired Mr. Barton in early 1988 to train Hot Twist. In 1988, Hot Twist was entered and successful in several horse shows. From mid-1988 through 1989, Mike Van Leuven handled the training responsibilities. Mrs. Dawson maintained books and records for the Activity.

Mr. Dawson believed that Hot Twist, after being adequately trained, could be entered into numerous national competitions and, if successful in these competitions, could become a profitable stud. Petitioners anticipated that the stud fee from breeding Hot Twist with a single mare would be approximately $1,000. Mr. Dawson also expected to obtain cash prizes from competitions in which Hot Twist participated as well as revenue from the sale of foals produced by breeding Hot Twist with petitioners' two brood mares.

Petitioners filed their 1988 joint income tax return on November 17, 1992, and Mr. Dawson filed his 1989 individual income tax return on or about April 21, 1993. Petitioners have conceded that the section 6651 addition to tax for failing to file their return in a timely manner is applicable to their 1988 joint income tax return and to Mr. Dawson's 1989 individual income tax return. On March 7, 1994, respondent issued a notice of deficiency disallowing petitioners' claimed deductions relating to the Activity and determining additions to tax and a penalty. On June 6, 1994, petitioners filed their petition.

OPINION

Section 183 limits the deductions for an activity not engaged in for profit. Sec. 183(b). An activity "not engaged in for profit" is defined as any activity for which no deductions are allowable under section 162 or under paragraph (1) or (2) of section 212. Sec. 183(c). For purposes of section 183, a

taxpayer engages in an activity for profit if he entered into the activity with the actual and honest objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983). The taxpayer's expectation of profit need not be reasonable, but he or she must have a good faith objective of making a profit. Allen v. Commissioner, 72 T.C. 28, 33 (1979); sec. 1.183-2(a), Income Tax Regs.

The determination of whether a taxpayer conducted the activity for profit is made based on the facts and circumstances of the case. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Although the purpose of the inquiry is to ascertain the taxpayer's subjective intent, greater weight is given to objective facts than to the taxpayer's statements of intent. Beck v. Commissioner, 85 T.C. 557, 570 (1985); sec. 1.183-2(a), Income Tax Regs. Petitioners bear the burden of proving they intended to make a profit. Beck v. Commissioner, supra at 570.

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine factors designed to provide guidance to courts in analyzing a taxpayer's profit objective. See Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724 (9th Cir. 1986), affg. Lahr v. Commissioner, T.C. Memo. 1984-472; Elliott v. Commissioner, 90 T.C. 960 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990). No single factor

is dispositive.  Golanty v. Commissioner, supra at 426.  The nine factors are:  (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation involved in the activity.  Sec. 1.183-2(b), Income Tax Regs.

After considering the evidence in this case, we conclude that petitioners engaged in the Activity with the actual and honest objective of making a profit.

## I.  Businesslike Manner

The fact that a taxpayer carries on an activity in a businesslike manner and maintains complete and accurate books and records may indicate that the activity was carried on for profit. Sec. 1.183-2(b)(1), Income Tax Regs.  Further, abandonment of unprofitable methods in a manner consistent with an intent to improve profitability may indicate a profit objective.  Id.

Several factors indicate that petitioners carried on the Activity in a businesslike manner.  Mrs. Dawson kept books and records for the business.  Petitioners also maintained a separate

bank account for the Activity.  Further, petitioners abandoned the Arabian horse breeding business when Mr. Dawson realized that it would be unprofitable.  Petitioners then sought a more profitable enterprise and decided to breed paint horses.  Their goal was to develop Hot Twist into a marketable stud.

Respondent contends that petitioners did not use business records to evaluate the financial status of the Activity.  We conclude that this contention does not necessarily undermine petitioners' position.  Petitioners owned only three horses.  They employed only one trainer at a time, and only one horse was shown in 1988.  No horses were shown in 1989.  We believe that petitioners were adequately aware of the results of their rather simple operation.  Their failure to establish that they analyzed their books and records is not determinative of this issue.

II.  Expertise

Preparation for an activity by extensive study of its accepted business, economic, and scientific practices, or consultation with those who possess expertise in the activity, may indicate that the taxpayer has a profit objective.  Sec. 1.183-2(b)(2), Income Tax Regs.

Respondent contends that petitioners did not consult experts for advice regarding the operation of the Activity.  We, however, believe Mr. Barton's uncontradicted testimony that petitioners sought and received his advice.  While Mr. Dawson was not an expert in the training, breeding, or showing of horses, he

regularly consulted with Mil Barton. Mr. Barton, with his 40 years of experience in the horse breeding and showing business, advised petitioners on how to breed a successful horse and how to make a profit in the Activity. In addition, petitioners hired veterinarians and trainers to board and care for their horses. These facts are consistent with petitioners' intention to make a profit.

III. Time Devoted to the Activity

The fact that a taxpayer devotes substantial personal time and effort to carrying on an activity may indicate an intention to derive a profit. Sec. 1.183-2(b)(3), Income Tax Regs. The fact that the taxpayer devotes a limited amount of time to an activity, however, does not necessarily indicate a lack of profit objective where the taxpayer employs competent and qualified persons to carry on the activity. Id.

Petitioners did not personally devote a substantial amount of time to the Activity. They did, however, hire competent and qualified persons to assist them in conducting the Activity. Petitioners hired Mil Barton and Mike Van Leuven to perform the training necessary to produce a quality show horse. Mr. Barton fed and cared for Hot Twist and attended horse shows with Hot Twist when Mr. Dawson could not attend. As discussed above, Mr. Barton was competent and qualified in the horse breeding and showing business. As a result, the fact that petitioners did not

devote substantial time to the Activity is not inconsistent with the existence of a profit objective.

IV. Expectation That Assets May Appreciate

The appreciation of assets is to be considered in determining whether a taxpayer intended to derive a profit from his activity. Sec. 1.183-2(b)(4), Income Tax Regs. Respondent contends that "petitioners' indifference to the present and future value of their horses weighs against a finding of profit motive." Respondent's contention, however, is contrary to the facts.

As Hot Twist became better known and trained, petitioners believed that: (1) Hot Twist could be bred with Kate Dillon and Dynamic King Bar and the sale of the foals would produce revenue; (2) Hot Twist could participate in national-level competitions, where gate prizes often reached $100,000; and (3) other horse owners would seek to breed their mares with Hot Twist. According to Mr. Barton, petitioners could make approximately $1,000 per foal by breeding Hot Twist. Mr. Dawson believed that Hot Twist could breed with more than 100 mares in a single year. Petitioners also expected to make money on "mare care" (i.e., a per diem amount for boarding and feeding mares brought to petitioners for breeding). All of these factors would have the effect of increasing the value of petitioners' horses.

We conclude that petitioners sincerely and reasonably believed that their horses would appreciate in value.

## V.  Taxpayers' Financial Status

The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that the activity is engaged in for profit.  Sec. 1.183-2(b)(8), Income Tax Regs.  Petitioners' financial status strongly suggests that petitioners engaged in the Activity for profit.  In 1988, petitioners earned wage income of $33,008 and net income of $16,334 from the carpet cleaning business.  In 1989, Mr. Dawson earned wage income of $28,618 from his job at the railroad and net income of $7,803 from the carpet cleaning business.  To earn this income, Mr. Dawson worked long hours at two arduous jobs.  Mr. Dawson's testimony indicated that he was a shrewd, hardworking, diligent, and levelheaded businessman.  We do not believe that he would squander his hard-earned money on an extravagant hobby.

## VI.  Amount of Profits

The amount of profits earned in the activity, when compared to the amount of losses incurred, the amount of the investment, and the value of the assets in use, may indicate a profit objective.  Sec. 1.183-2(b)(7), Income Tax Regs.  Petitioners did not earn a profit on the Activity.  The opportunity to earn substantial profits in a highly speculative venture, however, is ordinarily sufficient to indicate that the activity is engaged in for profit even though only losses are produced.  Id.  Further,

in determining whether the taxpayer entered into the activity for profit, a small chance of making a large profit may indicate the requisite profit objective. Sec. 1.183-2(a), Income Tax Regs. According to the regulations, "it may be found that an investor in a wildcat oil well who incurs very substantial expenditures is in the venture for profit even though the expectation of a profit might be considered unreasonable." Id.

Petitioners' family was one of modest means. Petitioners believed that the prospect of producing a champion horse that could generate hundreds of thousands of dollars in revenue and correspondingly large profits seemed to be well worth the risks involved. In essence, the Activity was petitioners' "wildcat oil well". Petitioners actually and honestly believed that if Hot Twist were successful in horse shows, future earnings and profits would be substantial. Mr. Barton confirmed that Hot Twist had the potential to be very successful. We conclude that petitioners' expectation of future profits is consistent with the existence of a profit objective.

VII. History of Income and Losses

A taxpayer's history of income, losses, and occasional profits with respect to an activity may indicate the presence or absence of a profit objective. Sec. 1.183-2(b)(6), Income Tax Regs. Respondent contends that, because petitioners have incurred losses on their horses in each year, they did not have the requisite profit objective. We disagree.

Section 1.183-2(b)(6), Income Tax Regs., states that "A series of losses during the initial or start-up stage of an activity may not necessarily be an indication that the activity is not engaged in for profit."  Where startup losses are involved, the taxpayer's objective must be not only to have future net earnings but also sufficient net earnings to recoup losses previously sustained.  Estate of Power v. Commissioner, 736 F.2d 826, 830 (1st Cir. 1984) (citing Bessenyey v. Commissioner, 45 T.C. 261 (1965), affd. 379 F.2d 252 (2d Cir. (1967)), affg. T.C. Memo. 1983-552.

Petitioners' losses were incurred during the Activity's startup stage.  In 1989, petitioners had been in the business of breeding paint horses for only 3 years.  Before Hot Twist could produce a profit, petitioners had to properly train the horse and show him in enough events for him to obtain a favorable reputation.  This would encourage other horse owners to seek to breed their mares with Hot Twist.  Based on Mr. Barton's advice, petitioners reasonably believed that revenue from the Activity would be sufficient to recoup previously sustained losses. Therefore, we conclude that petitioners' brief history of losses does not indicate the absence of a profit objective.

VIII.  Personal Pleasure or Recreation

The presence of personal pleasure or recreation may indicate the lack of a profit objective.  Sec. 1.183-2(b)(9), Income Tax Regs.  Respondent contends that petitioners derived substantial

personal pleasure from the Activity. Mr. Dawson admitted that he occasionally rode the horses at his home to keep them warmed up. As a result, respondent contends that petitioners derived personal pleasure from the Activity. This contention, however, is not supported by the record.

Mr. Dawson testified that neither he nor his family ever rode the horses for pleasure, and Mr. Barton confirmed that he was not aware of any member of Mr. Dawson's family riding the horses for pleasure. Further, even if Mr. Dawson did derive some satisfaction from the Activity, that is not determinative of the issue in this case. A taxpayer can enjoy his work and still be engaged in it for profit. See Jackson v. Commissioner, 59 T.C. 312, 317 (1972) (stating that "a business will not be turned into a hobby merely because the owner finds it pleasurable; suffering has never been made a prerequisite to deductibility"); Hart v. Commissioner, T.C. Memo. 1995-55 (same). The requirement is that a profit objective be the "basic and dominant" objective. Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d at 726. We conclude that it was.

IX. Past Successes in Activity

The taxpayer's past success in similar or dissimilar activities can be indicative of a profit objective. Sec. 1.183-2(b)(5), Income Tax Regs. Respondent contends that the fact that petitioners have never conducted a successful horse

breeding and training business indicates a lack of profit objective.  We conclude, however, that this factor is outweighed by the other factors considered above.

Having considered the factors listed in section 1.183-2(b), Income Tax Regs., all contentions presented by the parties, and the facts and circumstances of this case, we hold that petitioners actually and honestly intended to make a profit in the Activity.  Consequently, section 183 does not limit the deductions claimed by petitioners with respect to the Activity.

To reflect the foregoing,

Decision will be entered under Rule 155.