T.C. Memo. 1999-356

UNITED STATES TAX COURT

JAMES M. GOFORTH AND BRENDA GOFORTH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22351-97.                    Filed October 25, 1999.

<u>William R. Cousins III</u> and <u>Josh O. Ungerman</u>, for
petitioners.

<u>Candace M. Williams</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income taxes as follows:

| Year | Deficiency |
|------|-----------|
| 1993 | $33,320 |
| 1994 | 48,176 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issue for decision is whether petitioners' cattle ranch activity constituted an activity entered into for profit under section 183. All references to petitioner in the singular are to James M. Goforth.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioners resided in Amarillo, Texas.

From the time he was a child, petitioner grew up on a ranch and helped raise cattle.

In 1974, after completing medical school, a residency in pathology, and 2 years as a military doctor, petitioner began to practice medicine in Amarillo, Texas.

Also in 1974, petitioners purchased 640 acres of ranch land, located approximately 43 miles from petitioners' residence in Amarillo and from petitioner's medical office. On this land petitioner began to raise Angus-Hereford cattle. From 1974 through 1982, petitioners purchased additional land adjacent to

the 640 acres of ranch land, bringing the total ranch acreage to 2,560 acres.

The 2,560 acres of land consisted of 900 acres suitable for grazing of cattle, 1,000 acres of canyon land not particularly suitable for grazing of cattle, 110 acres covered by mesquite trees, and 550 acres that, because of their inclusion in a Government conservation program, could not be used for grazing of cattle. The 900 acres suitable for grazing of cattle represented 35 percent of the total ranch acreage.

From 1974 through 1982, petitioner alone worked on the ranch. Mrs. Goforth did not participate in raising the cattle, nor in other work on the ranch. During those years, petitioner spent considerable time on the ranch, visiting the ranch almost each day after completing his work as a doctor. In 1982, petitioner began cross-breeding Angus-Hereford cattle with Brangus bulls and selling the cross-breeds. Petitioner believed he could realize more income from sale of the cross-breeds than from sale of Angus-Hereford cattle.

In 1983, petitioner had a house built on the ranch that was intended for use as an eventual retirement home for petitioners. The home had a view overlooking the scenic Dripping Springs Canyon.

From 1983 through 1988, petitioners employed Greg Lichen as full-time manager of the ranch, and from 1988 through 1994,

petitioners employed David Randall as full-time manager of the ranch.

In 1983, corrals were built on the ranch to hold the cattle, and petitioner and Lichen built a barn on the ranch. Also in 1983, petitioner read several brochures, talked with several breeders of Brangus cattle, and concluded that Brangus cattle constituted a superior breed of cattle. Petitioner then decided to raise and sell Brangus cattle on the ranch. Petitioner paid $148,500 for the implantation of 33 Brangus cattle embryos in the cows on the ranch.

From 1984 on, petitioner visited the ranch infrequently. On weekends, petitioners and their children would occasionally use the ranch as a weekend retreat, and petitioner occasionally hunted on the ranch. In order to learn more about cattle, each week petitioner spent a few hours reading cattle journals, magazines, and catalogs.

Petitioner attempted to increase the number and quality of Brangus cattle on the ranch by having the cows bred using artificial insemination. Petitioner also bought five Brangus cows with calves. Petitioner generally would sell the bull calves and retain the heifers or female calves for future breeding purposes.

Over the years, petitioner entered the cattle in various cattle shows, and the cattle won several awards. Petitioner was proud of the awards and derived personal satisfaction therefrom.

Petitioner used petitioners' personal checking account to pay for ranch expenses. Petitioner did not maintain a written business plan, a general ledger, or a written budget with respect to the ranch.

In order to be profitable, petitioner needed to maintain at least 140 head of cattle on the ranch. In light of the topography of the ranch, however, the ranch could only support 100 head of cattle.

In 1995, petitioner sold most of the cattle, and thereafter petitioner raised only a few head of cattle. Also in 1995, for the first time, petitioners' ranch income was greater than expenses, resulting in a profit of $10,454.

On their 1983 through 1996 joint Federal income tax returns, petitioners reported gross income, expenses, and net income or loss relating to the ranch and income from petitioner's medical practice and other activities as follows:

| | | Ranch | | |
|---|---|---|---|---|
| Year | Gross Income* | Expenses | Net Income (Loss) | Petitioners' Nonranch Income |
| 1983 | $ 84,463 | $ 308,325 | ($ 223,862) | $ 533,198 |
| 1984 | 273,261 | 277,859 | (4,598) | 51,615 |
| 1985 | 42,110 | 288,626 | (246,516) | 171,230 |
| 1986 | 99,486 | 359,717 | (260,231) | 452,981 |
| 1987 | 74,300 | 241,417 | (167,117) | 265,788 |
| 1988 | 61,827 | 189,266 | (127,439) | 394,278 |
| 1989 | 24,926 | 213,277 | (188,351) | 515,927 |
| 1990 | 37,835 | 182,132 | (144,297) | 543,930 |
| 1991 | 78,268 | 170,663 | (92,395) | 593,948 |
| 1992 | 44,038 | 144,645 | (100,607) | 556,674 |
| 1993 | 73,102 | 151,937 | (78,835) | 472,653 |
| 1994 | 33,490 | 147,758 | (114,268) | 485,229 |
| 1995 | 106,388 | 95,934 | 10,454 | 514,322 |
| 1996 | 22,572 | 55,392 | (32,820) | 372,676 |
| Total | $1,056,066 | $2,826,948 | ($1,770,882) | $5,924,449 |

* Each year for 1986 through 1996, petitioners received $22,044 from the U.S. Department of Agriculture for the 550 acres of ranch land that was under the Government conservation program. This $22,044 is included in annual ranch gross income.

As reported, petitioners' net ranch losses offset petitioners' nonranch income consisting primarily of petitioner's income from his medical practice. As a result, petitioners greatly reduced their reported Federal income tax liability for 1983 through 1994.

On audit for 1993 and 1994, respondent determined that the ranch was not operated for profit, and respondent disallowed under section 183 petitioners' claimed ranch losses in excess of income derived from the ranch.

OPINION

Under section 183(b)(2), if an activity is not engaged in for profit, expenses relating thereto are allowable only to the extent gross income derived from the activity exceeds deductions allowable under section 183(b)(1) without regard to whether the activity constitutes a for-profit activity.  See Allen v. Commissioner, 72 T.C. 28, 33 (1979).

For purposes of section 183, an activity is not considered engaged in for profit unless it is conducted by the taxpayer with an actual and honest objective of making a profit.  See Antonides v. Commissioner, 91 T.C. 686, 693-694 (1988), affd. 893 F.2d 656 (4th Cir. 1990); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Barter v. Commissioner, T.C. Memo. 1991-124, affd. without published opinion 980 F.2d 736 (9th Cir. 1992); Westbrook v. Commissioner, T.C. Memo. 1993-634, affd. 68 F.3d 868 (5th Cir. 1995).

The regulations under section 183 provide a nonexclusive list of factors to consider in determining whether an activity is engaged in for profit.  Such factors include:  (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities;

(6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved.  See sec. 1.183-2(b), Income Tax Regs.

The taxpayer's expectation of profit need not be reasonable.  See Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Allen v. Commissioner, supra at 33; sec. 1.183-2(a), Income Tax Regs.  In determining whether an activity is engaged in for profit, greater weight is given to objective factors than to a taxpayer's mere statement of intent.  See sec. 1.183-2(a), Income Tax Regs.

Although no one factor is conclusive, a record of substantial losses over many years and the unlikelihood of achieving a profit are important factors bearing on the taxpayer's objective.  See Golanty v. Commissioner, supra at 426; sec. 1.183-2(b)(6), Income Tax Regs.  Petitioners have the burden of proof on this issue.  See Rule 142(a).

During, before, and after the years in issue, the limited time petitioners spent working with the cattle on the ranch and in the ranch activity is consistent with a hobby, not with a legitimate for-profit activity.  Petitioner's use of his and his wife's personal checking account to pay ranch expenses and the lack of a written business plan, a ledger, and a budget for

the ranch indicate that the ranch activity was not carried on in a businesslike manner. Petitioner derived personal satisfaction from raising what he believed were superior cattle and from awards the cattle won. Petitioners used the ranch for a weekend retreat, and petitioners intended to retire on the ranch. In order to be profitable, petitioners needed to maintain at least 140 head of cattle on the ranch. The ranch however, supported only a maximum of 100 head of cattle, precluding any profit from the ranch (except for 1995 when petitioner liquidated his herd of cattle for a small profit). From 1983 to 1996, petitioners' ranch activity accumulated losses of more than $1.7 million.

Based on the evidence, we conclude that petitioners have failed to establish that an actual and honest profit objective was associated with petitioners' ranch activity.

To reflect the foregoing,

Decision will be entered for respondent.