T.C. Memo. 2013-236

UNITED STATES TAX COURT

DAVID A. HOELSCHER AND MELISSA A. HOELSCHER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28081-11.                    Filed October 22, 2013.

Gerald L. Brantley, for petitioners.

Roberta L. Shumway and Bryan J. Dotson, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, Judge: The issues for decision, relating to 2007, 2008, and 2009

(years in issue), are: (1) whether petitioners engaged in a ranching activity with

[*2] the objective of making a profit and (2) whether petitioners are liable for section 6662(a)[1] accuracy-related penalties.

FINDINGS OF FACT

During the years in issue, petitioners owned NLC, Inc., a manufacturing corporation, and engaged in other business activities. They reported income of $2,856,218, $1,608,475, and $299,292 relating to 2007, 2008, and 2009, respectively. Mr. Hoelscher has an accounting background and was a member and former director of the Exotic Wildlife Association. Mrs. Hoelscher has a degree in fine arts and a longstanding interest in cutting horses.[2] Petitioners grew up on farms but do not have any formal education relating to farming, ranching, or raising exotic livestock.

Between December 1993 and January 1994, petitioners purchased Whiskey Canyon Ranch (WCR), a 2,564-acre property in eastern Kerr County, Texas. Petitioners moved to WCR, where they hunted, fished, entertained, and hosted game ranching seminars; bred and trained cutting horses; raised cattle, buffalo,

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years in issue.

[2]A cutting horse is a horse that has been trained to isolate an individual cow from a herd.

[*3] and exotic livestock;[3] and constructed a guest lodge, lighted arena, and primary residence. Petitioners made most of the management decisions relating to the ranching activity and hired Noe Silva to train and show their cutting horses in competitions.[4]

In 2003, petitioners transferred 465.7 acres of WCR to their wholly owned partnership. In August 2005, the partnership sold the 465.7 acres to a third party, and petitioners sold an option to acquire 309 acres of WCR to a different third party.

During the years in issue, petitioners reported on Schedules F, Profit or Loss From Farming, the following:

| Year | Gross income | Expenses | Losses |
|------|------|------|------|
| 2007 | $44,053 | $844,454 | $800,401 |
| 2008 | 66,133 | 983,245 | 917,112 |
| 2009 | 85,287 | 998,637 | 913,350 |
| Total | 195,473 | 2,826,336 | 2,630,863 |

---

[3]These include axis, red deer, scimitar horned oryx, barasingha, black angus antelope, sika deer, fallow deer, zebra, Eld's deer, and emu.

[4]Cutting horse competitions are events in which horses are judged on their ability to separate a single cow from a herd of cattle. Certain events can provide winners substantial prize money and the ability to earn substantial breeding fees.

[*4] From 1994 through 2009, petitioners reported gross income, expenses, and losses totaling $1,073,284, $11,011,866, and $9,938,582, respectively, relating to the ranching activity.

In a notice of deficiency sent to petitioners on September 27, 2011, respondent determined that the ranching activity was not engaged in for profit. Respondent further determined that petitioners were liable for income tax deficiencies of $292,115, $310,867, and $49,102 and accuracy-related penalties of $58,423, $62,173, and $9,820 relating to 2007, 2008, and 2009, respectively. On December 8, 2011, petitioners, while residing in Texas, filed a petition with the Court.

OPINION

A taxpayer generally may not deduct losses attributable to an activity unless that activity is engaged in for profit. See Westbrook v. Commissioner, 68 F.3d 868, 875 (5th Cir. 1995), aff'g per curiam T.C. Memo. 1993-634. Petitioners did not engage in the ranching activity with the requisite profit objective. See Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs. (setting forth nine nonexclusive factors that may indicate whether a taxpayer has a profit objective). To the contrary, recreation and personal pleasure were the primary factors

[*5] motivating petitioners to engage in, and continue, the ranching activity. See sec. 1.183-2(a), Income Tax Regs. ("Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the objective of making a profit."); sec. 1.183-2(b)(9), Income Tax Regs. Petitioners' substantial income from other sources allowed them to willingly absorb losses totaling approximately $10 million over 16 years. See Golanty v. Commissioner, 72 T.C. at 428; sec. 1.183-2(b)(8), Income Tax Regs.

Mrs. Hoelscher testified that petitioners "just keep chugging along, trying to make something work", yet they did not take any meaningful action to reduce expenses or increase revenue. See sec. 1.183-2(b)(1), Income Tax Regs. Indeed, they had no plan to achieve profitability. Mrs. Hoelscher likened her quixotic goal, of breeding a championship horse, to "winning the lottery". Petitioners are sophisticated and successful in business but did not conduct the ranching activity in a businesslike manner. See id. They did not keep an inventory of the animals on WCR; maintain insurance relating to WCR or their livestock; or prepare a written business plan, budget, or projection of future profitability.

Petitioners held WCR primarily to profit from an increase in its value. See sec. 1.183-1(d)(1), Income Tax Regs. As petitioners' expert testified: "[T]he rate

[*6] of return from agricultural endeavors * * * [did] not provide an adequate return to the land", and WCR and properties in its neighborhood were most valuable as investments. Indeed, the 2005 sale of 465.7 acres and the option to sell an additional 309 acres further demonstrate that WCR was held for appreciation. See id. Petitioners contend that their expectation of, and WCR's actual, appreciation over time (i.e., approximately $22 million) demonstrate their profit objective relating to the ranching activity. Petitioners' expectation that WCR would appreciate does not, however, affect our determination as to whether petitioners engaged in the ranching activity for a profit. See id. Farming and holding land primarily to profit from an increase in value will be considered the same activity only where the income from farming exceeds the deductions from farming that are not attributable to holding the land. See id. The holding of WCR was a separate activity because the income relating to the ranching activity did not exceed the deductions. See id.

Petitioners reported losses resulting in understatements of tax of $292,115, $310,867, and $49,102 relating to 2007, 2008, and 2009, respectively. These understatements exceed 10% of the tax required to be shown on the returns, and therefore are substantial understatements of income tax. See sec. 6662(d)(1)(A). Respondent bears, and has met, his burden of production. See sec. 7491(c);

**[*7]** <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). Petitioners have not established reasonable cause for the underpayments or that the returns were prepared in good faith. <u>See</u> sec. 6664(c); <u>Higbee v. Commissioner</u>, 116 T.C. at 448-449. Accordingly, we sustain respondent's determinations.

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.